UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 13-CR-161 (JMC) |
| ) | |
| RODOLFO LOPEZ IBARRA, ) | |
|    also known as "Gordo Pipero," ) | |
| "Gordo 41," "Nene," "Nito," ) | |
| "Jaimillo, "Patricio," "Jymy," ) | |
| "Lucas," "Moet Chandon," and ) | |
| "Vatirri," ) | |
| ) | |
|    Defendant. ) | |

## JOINT STATEMENT OF STIPULATED FACTS

The statement of facts does not purport to include all the Defendant's illegal conduct during the charged offense, nor is it intended to represent all the Defendant's relevant conduct for sentencing purposes. The statement of facts does not constitute an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his conspirators. It instead represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would show the following beyond a reasonable doubt:

    1.    Beginning in or about 2003, and continuing until at least December 2016, in Mexico, Guatemala, Colombia and elsewhere, the Defendant was a member of a conspiracy, the object of which was to distribute five kilograms or more of cocaine, intending and knowing that such substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963.

2. During the course and in furtherance of the conspiracy alleged in the Superseding Indictment, the Defendant admits that he worked closely with several high-ranking members of the Sinaloa Cartel, a drug trafficking organization ("DTO") comprised of an affiliation of drug traffickers and money launderers located in multiple parts of Mexico but primarily based in the Mexican state of Sinaloa.

3. The Sinaloa Cartel is a violent Mexican criminal organization engaged in manufacturing, distributing, and importing large quantities of cocaine and other drugs into the United States, among other illegal activities. The Sinaloa Cartel is comprised of several factions that work together to control territory, transport cocaine and other drugs to the border for importation to the United States, and invest in loads of cocaine that come from multiple South and Central American countries.

4. The Defendant admits that, between January 2003 and December 2016, he worked with drug traffickers in the Sinaloa Cartel to transport cocaine delivered to Mexico within Mexico and from there to multiple locations in the United States. The Defendant's duties included but were not limited to:

    a. Utilizing private aircraft to transport cocaine from South American to various locations in Mexico;

    b. Utilizing vehicles outfitted with hidden compartments to transport cocaine from Mexico to the United States and then to return money to Mexico obtained from the sale of narcotics in the United States;

    c. Utilizing vehicles outfitted with hidden compartments to transport bribes to public officials, including police and military officers, within Mexico to secure the unhindered distribution of the Cartel's narcotics;

  d. Coordinating the transportation of loads of cocaine he purchased with other investors; and

  e. Communicating with sources of supply for cocaine in Colombia.

5. Specifically, from 2004 to 2006, the Defendant worked closely with a drug trafficking organization headed by Benjamin Leopoldo Jaramillo Felix, a member of the Sinaloa Cartel. The Defendant and other members of the conspiracy, including more than five workers he supervised and paid, transported 300 to 600 kilograms of cocaine per load on behalf of Jaramillo Felix. He transported multiple loads, and the loads went to Culiacan, Sinaloa, Guadalajara, Jalisco, and Mexico City for further distribution into the United States. During the period of February to November 2006, the Defendant invested in cocaine with Jaramillo Felix valued at approximately $6,300,000.

6. The Defendant also worked closely with Arturo Beltran Leyva and his drug trafficking organization, known as the Beltran Leyva Organization (the "BLO"), until his arrest by Mexican authorities in 2009. After being released from custody in 2014, the Defendant continued to invest in cocaine loads and transport cocaine to various parts of Mexico and the United States in conjunction with the BLO. The Defendant coordinated the transportation and distribution of cocaine loads from Mexico into the United States, shipping the drugs in trains, buses, tractor trailers, passenger vehicles, and other vehicles, all outfitted with hidden compartments. After the drugs were delivered in the United States, the Defendant received United States currency as payment for the cocaine. Often the cash transports from the United States back to Mexico would also be made in tractor trailers or in vehicles with trap doors or other hidden compartments.

7. The Defendant knew that, during the conspiracy, his co-conspirators paid bribes to police and government officials in Mexico. The Defendant further knew that these bribes were

paid so that the Mexican government would not interfere in the drug trafficking activities of the Defendant and others.

8.  During the conspiracy, the Defendant's co-conspirators also utilized private airplanes to transport cocaine from South America to various locations in Mexico. In August 2016, one of the airplanes used by them crashed in Venezuela. Law enforcement officials recovered over 200 kilograms of cocaine from the wreckage.

9.  On December 8, 2016, United States law enforcement seized approximately 30 kilograms of cocaine concealed in the bed of a pick-up truck stopped in Anaheim, California. The cocaine belonged to the Defendant and other co-conspirators.

10. The Defendant sold controlled substances on behalf of the Sinaloa Cartel and the BLO and personally invested in cocaine loads totaling over 10,000 kilograms that were imported and distributed in the United States. Prior to distribution in the United States, the Defendant stored the cocaine in buildings he controlled and maintained. Most of the cocaine distributed by the Defendant was ultimately destined for and crossed into the United States.

11. Other members of the conspiracy participated in acts of violence against rival drug trafficking groups during conflicts for control over drug plazas and trafficking routes. These acts of violence involved the use of firearms.

12. The Defendant admits that he supervised more than five other co-conspirators who participated in the criminal conspiracy.

13. The Defendant admits that the total amount of controlled substances involved in this conspiracy that is directly attributable to him was more than 450 kilograms of cocaine.

14. The Defendant admits that he knew the cocaine would be illegally imported into the United States for further distribution.

15. The Defendant agrees venue and jurisdiction lie with this Court pursuant to 18 U.S.C. § 3238.

16. The Defendant also agrees that his participation as a conspirator in the above-described acts were in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

17. With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

18. The Defendant is pleading guilty because the Defendant is in fact guilty.

Respectfully submitted,

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section Criminal Division
U.S. Department of Justice

Date: 2/4/26    By: _____

KIRK HANDRICH
Trial Attorney
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

Approved by:

Date: 2/4/26    By: _____

KAITLIN J. SAHNI
Acting Chief
Narcotic and Dangerous Drug Unit
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this Statement of Facts with the assistance of an English-Spanish interpreter, and have discussed it at length with my attorney, Frank Perez, Esq. This Statement of Facts has been translated into Spanish for me. I understand that the English version controls. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement dated February 4, 2026. I am satisfied with the legal services provided by my attorney in connection with this Statement of Facts, the accompanying Plea Agreement, and all matters related to it.

_____   2/4/2026
RODOLFO LOPEZ IBARRA             Date
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have fully explained to the Defendant, through an English-Spanish interpreter, the Defendant's rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is agreeing to this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.

_____   2-4-26
FRANK PEREZ, ESQ.                Date
Attorney for Defendant